985 F.2d 559
 80 Ed. Law Rep. 810
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Kathy COLEMAN, Plaintiff-Appellant,
v.
Brian L. WIRTZ, John Marshall High School Principal; Alfred
D. Tutela, Cleveland Public Schools Superintendent; Ralph
J. Perk, Jr., Cleveland Board of Education President; and
Cleveland Board of Education,
 No. 92-3194.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1993.
 
 Before RALPH B. GUY, Jr. and ALAN E. NORRIS, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff appeals the dismissal of her 42 U.S.C. § 1983 action for failure to state a claim upon which relief can be granted and the grant of defendants' motion for summary judgment on her Title VII claim for race and sex discrimination. The district court also dismissed, without prejudice, her pendent state claims for assault and battery, libel per se, negligence, and intentional infliction of emotional distress. In dismissing each of plaintiff's claims, Judge Battisti gave careful consideration to the issues involved. For the reasons set forth in his opinions, we affirm. We write briefly only for clarification.
 
 I.
 
 2
 In her second year of teaching science at John Marshall High School, plaintiff, Kathy Coleman, a black female, began having difficulties with the new principal of the school, defendant Brian Wirtz, a white male. Most, if not all, of the problems encountered stem from plaintiff's organization of a trip for students to London, England, and Paris, France, dubbed the "London Connection." Along with three other faculty members, plaintiff approached Wirtz with the proposal for 24 students to participate in the trip which was designed to reward students with good attendance, good citizenship, or good academic performance.[1] Wirtz directed the teachers to the fund raising policies, which could be found in the library, and informed them of the need for approval of the proposal from the area superintendent. The "London Connection" would be the most expensive extra-curricular project the school had undertaken and would be the first time students would be venturing overseas. Plaintiff had never gone on such a trip and had never engaged in fund raising, let alone fund raising of the magnitude required for an overseas excursion. Despite plaintiff's lack of experience, she became the spokesperson for the "London Connection."
 
 
 3
 To understand the backdrop against which the parties were acting, the atmosphere of the school must be described. Prior to Wirtz's arrival as principal, John Marshall had very serious problems with truancy, violence, drugs, and discipline. There also was reported gang violence and arson. (App. 162). Wirtz is described as an aggressive administrator. He walked the halls daily to let students and faculty know he was available and accessible. He changed many of the formerly lax policies. He made attendance at faculty meetings mandatory. Any teacher missing a meeting was spoken to the next day. He required faculty to adhere to the safety procedure of standing outside their classrooms between classes. One of the other procedures he began strictly enforcing concerned fund raising activities. This is where the problems with the plaintiff began.
 
 
 4
 There were school board procedures and state guidelines regarding accounting for funds used for student activities. Plaintiff did not seek prior approval from the finance committee for the various activities as required; she "just began fund raising." (App. 670). The first incident between plaintiff and defendant Wirtz occurred after the first fund raiser, a basketball game between students and volunteer marines held during school hours. Wirtz met with plaintiff after the game and told her he was upset because he was not aware so many students would be attending and would have had more security present. In addition, Wirtz complained that the students were dismissed from the game en masse into a narrow hallway which he felt was hazardous. Plaintiff became very angry and defensive and stormed out of the office. Plaintiff alleges that Wirtz was harassing her.
 
 
 5
 Other fund raising activities were a calender sale and a candy sale. Wirtz and the finance committee repeatedly asked Plaintiff to comply with procedures regarding accounting for the funds. She again complained she was being harassed. She sent Wirtz a memo stating she would attend a conference with him "if, and only if, it concerns money for our students." (App. 216). At this point the area superintendent became more involved, requesting a proper accounting of the funds. Problems surrounding the trip continued. A detailed description of all of the incidents would fill pages.
 
 
 6
 In late February, Wirtz held a conference with plaintiff and her union representative. Wirtz questioned plaintiff about her failure to attend a faculty meeting, standard practice when any teacher missed a mandatory meeting. Wirtz also wanted to know why she had left her class unattended two days earlier. She stated she was taking care of business for the trip. She then refused to answer any more questions, abruptly left the conference, and refused to return to class.
 
 
 7
 On the morning of March 1, with the trip less than one month away, Wirtz again met with plaintiff and a union delegate. The meeting was to discuss the ongoing communication problem, the need for a detailed accounting of funds, a detailed itinerary for the trip, and a final list of students, including each student's emergency information. Plaintiff refused to cooperate in the meeting and left. Wirtz telephoned his supervisor, Dr. Turner, a black male, who requested a conference with defendant Wirtz and plaintiff for the next morning. Wirtz went to plaintiff's classroom and asked her to step into the hallway. When he informed her of this meeting, Wirtz states plaintiff became hysterical and was "out of control." Plaintiff states she tried to go back into her classroom because her purse was inside and he blocked the way. Wirtz states she shoved him aside and went into the room. Wirtz alleges that plaintiff was out of control and he was concerned for her safety and that of her students. Wirtz attempted to escort her from the room by taking ahold of her arm. Plaintiff states Wirtz dragged her out of the classroom, ripping her nylons and injuring her foot. No medical report or other evidence has been presented as to her alleged injury. (App. 234).
 
 
 8
 After returning from the trip, plaintiff was assigned to a school board office for the remainder of the year. Plaintiff filed grievances with the union, criminal charges against Wirtz, and a grievance with the EEOC. The union arbitrator dismissed all grievances. Wirtz's conviction of a misdemeanor assault is currently on appeal.
 
 
 9
 Plaintiff brought the present action before being issued a right to sue letter from the EEOC. She alleged "discrimination, bias and harassment based her on race and sex." (App. 57). She also alleged a violation of 42 U.S.C. § 1983 that her Fourth and Fourteenth Amendment rights were violated: "namely, her rights to be secure in her person and in her liberty, to be free from unlawful imprisonment or unlawful detention to enjoy equal protection of the law in equality of opportunity in holding public employment...." (App. 56-57). In addition to her federal claims, she alleged several pendent state common law claims. The district court dismissed her § 1983 action for failure to state a claim and declined to exercise pendent jurisdiction over her state law claims, dismissing them without prejudice. After allowing plaintiff to amend her complaint to add the receipt of her right to sue letter, the court granted summary judgment to the defendants on plaintiff's Title VII claim.
 
 II.
 Section 1983
 
 10
 Plaintiff's entire argument for reversal of the dismissal of her § 1983 claim consists of one sentence:
 
 
 11
 Plaintiff maintains that through discovery, new evidence, previously unavailable, has surfaced that will indeed substantiate the elements of the due process and civil rights violations under Section 1983.
 
 
 12
 (Plf's Brief at 19-20). Plaintiff does not elucidate. Without an indication of what this evidence is and a valid justification for not bringing the evidence before the trial court, plaintiff's argument is totally without merit.
 
 
 13
 Plaintiff never clearly defined any deprivation of a federal constitutional or federal statutory right upon which a § 1983 claim depends. See Golden Gate Transit Corp. v. City of Los Angeles, 493 U.S. 103, 105 (1989). After noting the ambiguity in plaintiff's complaint, the district court presumed that, because she alleged violations of the Fourth and Fourteenth Amendments, plaintiff was basing her claim on the March 1 incident involving defendant Wirtz. The court thoroughly and correctly determined that what plaintiff alleged was not a Fourth Amendment violation. The district court aptly pointed out what the Supreme Court has made clear:
 
 
 14
 Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations for duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.
 
 
 15
 Baker v. McCollan, 443 U.S. 137, 146 (1979). Judge Battisti also correctly deferred discussion of plaintiff's claims regarding discrimination to his Title VII analysis. See Day v. Board of Auditors, 749 F.2d 1199, 1204 (6th Cir.1984) (citing Great Am. Fed. Sav. & Loan v. Novotny, 442 U.S. 366, 376 (1979)).
 
 
 16
 However, plaintiff, in her memorandum in support of her motion for reconsideration, argued that she was deprived of "her Fourteenth Amendment rights without due process of law." (App. 153). "The Fourteenth Amendment's Due Process Clause protects life, liberty and property." Charles v. Baesler, 910 F.2d 1349, 1352 (6th Cir.1990). Again, plaintiff is unclear regarding exactly what deprivation of life, liberty, or property she suffered. Plaintiff was never fired by the Cleveland schools. She was reassigned to a school board office on May 30, 1989, for the remainder of the school year, until formal grievance procedures and legal proceedings were completed. This assignment was made for the benefit of the students and the learning atmosphere that was disrupted by the ongoing problems surrounding plaintiff. (App. 168). The following school year, plaintiff resumed teaching in the Cleveland schools, albeit in a different building. Plaintiff emphasized that certain procedures required by her union contract were not followed. Without identifying a life, liberty, or property interest of which she was deprived, there can be no claim for violation of procedural due process. If plaintiff is arguing that her substantive due process rights were violated, this court has already made clear that "substantive due process does not protect the run-of-the-mill contractually-based property interest...." Charles, 910 F.2d at 1351.
 
 
 17
 Plaintiff has failed repeatedly to articulate any violation of a federal constitutional or federal statutory right as required by 42 U.S.C. § 1983. Dismissal of plaintiff's § 1983 claim was appropriate.
 
 III.
 Title VII
 
 18
 After plaintiff was permitted to amend her complaint to add her right to sue letter, defendants renewed their motion for summary judgment. The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 19
 Clearly, mere allegations of a cause of action may no longer suffice to get a plaintiff's case to the jury. When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact.
 
 
 20
 Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir.1989).
 
 
 21
 In Title VII cases, the burdens of the parties have been clearly established:
 
 
 22
 First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving a prima facie case, the burden shifts to defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.
 
 
 23
 Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citations omitted). Throughout the case, the ultimate burden of proving intentional discrimination by the defendant remains with the plaintiff. Id. at 253.
 
 
 24
 In order to establish a prima facie case of discrimination, plaintiff would need to show "1) that she is female and a member of a racial minority; 2) that she and a similarly situated white or male person received dissimilar treatment; and 3) that sufficient evidence exists from which the court can find a causal connection between race or sex and the alleged acts of the defendants." Cooper v. City of North Olmsted, 795 F.2d 1265, 1270 (6th Cir.1986). Plaintiff has failed to show any evidence supporting a prima facie case. She has offered no evidence that similarly situated individuals were treated differently or that a causal connection existed.
 
 
 25
 Plaintiff alleges she was harassed in the context of fund raising for the "London Connection." She has shown no other whites or males who were similarly situated. Of the two white male teachers whose fund raising activities plaintiff alleges were not as closely monitored, one was not involved in fund raising but rather hosting a social event, and the other was requested to give the same detailed accounting. In addition, these teachers, unlike plaintiff, were not raising the same sums of money, nor were they proposing to take students out of the country. Also, unlike plaintiff, these teachers had participated in fund raising in the past. Plaintiff has failed to show that the policies regarding fund raising were selectively or inconsistently enforced, let alone that any alleged inconsistency was based on the plaintiff's race or gender.
 
 
 26
 Plaintiff alleges that she was harassed when Wirtz requested she remove a picture of Dr. Martin Luther King from her door window so as to allow for greater visibility. All teachers were notified through a memorandum that door decorations could not obscure visibility into the classrooms. Plaintiff's allegation that other teachers were allowed to cover their windows is without merit. Plaintiff singles out the home economics room and the drill team practice room where students changed clothes. The window covering in those rooms consisted of shades that were temporarily drawn to permit students to change clothes. Again, plaintiff has failed to show that she was treated differently or that any disparity was due to her race or gender. The fact that the pictures on her door were of Dr. King is of no significance because plaintiff was allowed to hang pictures of Dr. King elsewhere in her classroom.
 
 
 27
 Additionally, even if plaintiff had made out a prima facie case as to each of these alleged incidents of discrimination, the defendants have shown legitimate, nondiscriminatory reasons for their actions, which have not been rebutted by the plaintiff. The need to keep close track of funds that are raised in the name of the school and the need to have an unobstructed view into the classrooms of John Marshall High School cannot be overstated. On at least one occasion, plaintiff had left her class unattended, further explaining the necessity for a clear view into her classroom. Plaintiff has offered no evidence to show that these policies were merely a pretext for harassment, nor has she shown that any alleged harassment was related to her race or gender.
 
 
 28
 Plaintiff also alleges that the March 1 incident was an act of racial or sexual harassment in itself. Plaintiff argues that Wirtz would not have touched her if she had been a man. However, mere allegations and conclusions, without more, are not enough to avoid a motion for summary judgment. Cloverdale Equipment, 869 F.2d at 937.
 
 
 29
 Summary judgment in favor of the defendants on plaintiff's Title VII claim was properly granted.
 
 
 30
 AFFIRMED.
 
 
 
 [1]
 In the end, of the 11 students who participated, one was pregnant, and one was on probation, requiring the approval of his probation officer. Plaintiff admitted that no one with the $500 required student contribution was denied participation. Plaintiff was the only teacher in attendance. Other adults included her mother, her mother's friend, and several parents