Tinah D. MISCHER, Plaintiff,

v.

ERIE METROPOLITAN HOUSING AUTHORITY, et al., Defendant.

No. 3:03CV7429.

United States District Court, N.D. Ohio, Western Division.

Nov. 19, 2004.

Gerald R. Walton, Cleveland, OH, John C. Kress, St. Louis, MO, for Tinah D. Mischer, Plaintiff.

Aretta K. Bernard, Roetzel & Andress, Karen D. Gaum, Roetzel & Andress, Akron, OH, Corey A. Donovan, Robison, Curphey & O'Connell, Thomas J. Antonini, Robison, Curphey & O'Connell, William V. Beach, Robison, Curphey & O'Connell, Toledo, OH, for Erie Metro Housing Authority, Edward Feick, Robert Moore, Ms. Cheryl Ward, Feick Contractors, Inc., John A. Feick, an individual, Defendants.

## ORDER

CARR, District Judge.

This is a wrongful termination case brought by plaintiff Tinah Mischer. The defendants are the Erie Metro Housing Authority (EMHA), EMHA board members Edward Feick, Robert Moore, and Cheryl Ward, and John A. Feick, and Feick Contractors, Inc.

Plaintiff claims that she was terminated in violation of her employment contract and that defendants violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, by discriminating against her based on her gender and race. This court has jurisdiction pursuant to Title VII and plaintiffs' allegations of additional violations of rules and regulations of the Department of Housing and Urban Development under 28 U.S.C. § 1331.

Plaintiff originally asserted eleven causes of action: breach of written contract, breach of implied contract, wrongful termination in violation of public policy, promissory estoppel, detrimental reliance, discrimination on the basis of race, discrimination on the basis of gender, tortious interference with contract and business relationship, fraud in the inducement, civil conspiracy, and procedural due process. I have previously dismissed all but the gender discrimination, race discrimination, public policy wrongful termination, and promissory estoppel claims.

Pending is defendants' motion for summary judgment on her remaining claims. For the following reasons, defendants' motion will be granted.

## Background

EMHA hired defendant in May, 2001, as its Family Self Sufficiency Coordinator. In December, 2001, the agency promoted her to the position of Director of Section Eight Housing. In April, 2002, plaintiff became the agency's Executive Director.

On becoming Executive Director, plaintiff received an unsigned "Executive Director Employment Contract," which stated that her term of employment was three years. In June, 2002, two months after plaintiff's appointment to the Executive Director position, EMHA terminated her. At the time of plaintiff's termination the employment contract remained unsigned.

## Discussion

### 1. Gender and Race Discrimination Claims

Plaintiff contends that she has established a prima facie case of disparate treatment on the basis of sex and race under *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To create a prima facie case of disparate treatment, a plaintiff must show that 1) she was a member of a protected class; 2) she was discharged; 3) she was qualified for the position; and 4) she was replaced by a person outside her protected class. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 581 (6th Cir.1992). Because plaintiff is a minority female who was terminated from a position for which she was qualified, and she was replaced by a white male, she has established a prima facie case of disparate treatment because of

race and gender.[1]

■ Nonetheless, Plaintiff cannot prevail. Defendant has proffered several non-discriminatory reasons for its decision to fire the plaintiff, including "incompetence, unwillingness to work with her subordinates, and the utter inability to perform the duties of the position." (Doc. 69, attachment 1, at v).

Plaintiff disputes several of the specific allegations about her conduct. But she has not raised a genuine dispute about the principal reason given for her termination: that she simply could not work amicably with other people. This was the reason expressed to her on termination (Mischer Dep. at 68), and plaintiff does not contest the fact that her termination stemmed from her "aggressive" behavior. (Mischer Dep. at 91).

■ Plaintiff's contention that her assertive and aggressive personality was only a problem because of her race and gender has no basis in the record. Plaintiff's mere assertion that race and gender were factors, without more, simply is not enough to show pretext. *Wilson v. Dana Corp.*, 210 F.Supp.2d 867, 879, n. 7 (W.D.Ky.2002); *accord Coleman v. Wirtz*, No. 92–3194, 1993 WL 5906, *5 (6th Cir. Jan 13, 1993).

Plaintiff admitted in her deposition that she had had "some sort of confrontation with almost everyone who was a direct report to [her]." (Mischer depo. at 116).

Rather than rebut this fact, plaintiff "surmises" that, because she was there to "clean up thirty years of mess," anyone in her position would meet resistance and create conflict. Absent a showing, which plaintiff does not make, that the agency wanted a confrontational manager, the agency could properly expect plaintiff to run the agency without antagonizing her subordinates.

Even if such an expectation is somehow unreasonable, that fact does not defeat defendants' claim that plaintiff's termination was non-discriminatory. In assessing a claim of pretext, "it is important to note that an employer may make employment decisions for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all as long as its action is not for a discriminatory reason." *Beaty v. A & P*, No. 02–73045, 2003 U.S. Dist. LEXIS 15076, *11 (E.D. Mich. June 23, 2003) (quoting *Nix. v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir.1984)); *accord McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 373 (7th Cir.1992) (a court does not "sit as a super-personnel department that reexamines an entity's business decisions ... [t]hus, the issue of pretext does not address the correctness or desirability of reasons offered for employment decisions.")

Plaintiff's assertion that she was placed in a difficult and potentially volatile situation does not give rise to an inference that defendants' reasons for terminating her are pretextual. As plaintiff has not car-

---

1. Plaintiff also claims to have made out a prima facie case of disparate treatment on account of race and sex under the alternate framework outlined in *Mitchell*. Under that framework, a plaintiff must show that she was a member of a protected class and that for the same or similar conduct she was treated differently than similarly-situated non-minority employees. Plaintiff contends that she was treated differently than a predecessor Executive Director, Mr. Conway, whose probation-ary period was extended by the agency before he was terminated. Because Conway had already made it past his initial six-month probationary period when he was terminated and plaintiff had survived only two months, the two are not "similarly situated in all respects." 964 F.2d at 583. Thus, Conway cannot be considered a "comparable," and plaintiff has not established a prima facie case of disparate treatment under this framework.

ried her burden of showing pretext, defendants are entitled to summary judgment on plaintiff's gender and race discrimination claims.

## 2. Discrimination Claims Against Edward Feick

Plaintiff claims that Edward Feick, the EMHA board member who notified plaintiff of her termination, discriminated against her on the basis of her race and gender. Defendant seeks dismissal of Mr. Feick from this suit on both plaintiff's Title VII and O.R.C. § 4112 claims.

In an order dated July 14, 2004, I already dismissed plaintiff's Title VII claim against Mr. Feick on the basis that Mr. Feick was a supervisor, and thus, under Title VII, not plaintiff's employer.

■ Under O.R.C. § 4112, Mr. Feick can be personally liable to the plaintiff only for his own discriminatory conduct and not that of the EMHA board. *Genaro v. Cent. Transp.*, 84 Ohio St.3d 293, 297–99, 703 N.E.2d 782 (1999).

Plaintiff asserts no factual allegations of discrimination by Mr. Feick. Because the plaintiff has not offered any evidence that Mr. Feick, in his capacity as plaintiff's supervisor discriminated against her, Mr. Feick's motion to be dismissed from this suit shall be granted.

## 3. Plaintiff's Public Policy Claim

Plaintiff claims that her termination violated Ohio public policy. The Ohio Supreme Court has held that employment decisions that contravene public policy cannot be upheld under the employment-at-will doctrine. *Painter v. Graley*, 70 Ohio St.3d 377, 384, 639 N.E.2d 51 (1994) ("[A]n exception to the traditional doctrine of employment-at-will should be recognized *only* where the public policy alleged to have been violated is of equally serious import

as the violation of a statute." (citation omitted) (emphasis added)).

The elements of a public policy tort are:

1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).

2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).

3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Id.* at 384, n. 8, 639 N.E.2d 51 (citation omitted).

Plaintiff claims that O.R.C. § 3735.28 provides a basis for her public policy. This section states:

A metropolitan housing authority shall organize by electing one of its number chairman, and another vice-chairman, and it may employ counsel, a director, who shall be ex officio secretary, and such other officers and employees as are desired, and shall fix the term of office, qualifications, and compensation of each.

■ Plaintiff contends that this statute embodies a public policy preventing defendants from terminating her for cause. According to the plaintiff, her hiring for a probationary term, rather than a fixed term, contravened the statute's mandate that the term of office was to be "fixed." Plaintiff further contends that hiring her with the mutual understanding that she would be an at-will employee likewise violated that mandate.

Plaintiff's assertions are without merit. Even if plaintiff's contention that firing her

before the end of her term violated the statutory policy were correct, she still has not shown the other three elements of the public policy tort. To prevent employers from firing term employees for cause would allow such employees to violate employment and performance norms without risk of response by the employer aside from non-renewal of the term. No public policy would support or allow such result.

Further, defendants did not violate the statute: the agency did "fix the term of office" when it hired the plaintiff for a probationary term. Making the Executive Director position "at-will" did nothing to destroy what the term was; it merely clarified how plaintiff could be removed from her position. To "fix the term of office" means simply to define how long the term *may* last. No public policy under the cited statute prevents an employer who "fix[es] the term" of employment, even if that term is indefinite, from firing an employee.

Perhaps most importantly, plaintiff has not shown that the defendants lacked a legitimate business reason, the required fourth prong of the public policy test, for her termination. The overwhelming and undisputed evidence is that the plaintiff did not get along with her co-workers and did not follow her supervisor's instructions. Even if the statute expresses a public policy as asserted by the plaintiff, she has not met her burden under the fourth prong.

■ Finally, plaintiff contends that Title VII and O.R.C. § 4112 also provide a basis for her public policy claim. As the defendant correctly points out, there are valid statutory remedies under these statutes for the plaintiff to pursue: she can, and has, sought redress for her alleged wrongful termination under those statutes. If there is an adequate statutory remedy, a court should not also entertain a claim of wrongful discharge in violation of public policy. *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 244, 773 N.E.2d 526 (2002).

Defendants' motion for summary judgment as to plaintiff's public policy tort claim shall be granted.

### 4. Promissory Estoppel

■ To maintain a claim in promissory estoppel, "the party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse and that reliance must have been reasonable in that the party claiming estoppel did not know and could not have known that its adversary's conduct was misleading." *Shampton v. City of Springboro,* 98 Ohio St.3d 457, 461, 786 N.E.2d 883 (2003) (*quoting Ohio State Bd. of Pharmacy v. Frantz,* 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990)); *see also Rucker v. Everen Sec., Inc.,* 102 Ohio St.3d 1247, 1248, 811 N.E.2d 1141 (2004) (to prove promissory estoppel, "a plaintiff must show the existence of a promise that the promisor should reasonably expect to induce action or forbearance by the promisee and that does induce such action or forbearance.").

There is insufficient evidence that defendant made any promises to the plaintiff. Without a promise, promissory estoppel claims fail.

Plaintiff claims that a representative of defendants told her that there was a strong likelihood that she would successfully complete her probationary period. Standing alone, this is not a promise. In any event, plaintiff can not show how she relied on this statement or that such reliance would have been reasonable.

Plaintiff claims she reasonably relied on statements by Conway when seeking out the Executive Director's position. Plaintiff asserts that Conway told her that his probationary period had been extended; plaintiff contends that she would not have

applied for the Executive Director position if Conway had not told her about his experience, particularly the extension of his probationary period. These statements, even if attributable to the agency, were not promises. They were, rather, merely information about what happened to someone in the past.

Plaintiff cannot show that any statement made to her was a promise or that she reasonably relied on any supposed promises. Therefore, defendants' motion for summary judgment on plaintiff's promissory estoppel claims shall be granted.

### Conclusion

In accordance with the above it is, therefore,

ORDERED THAT defendants' motion for summary judgment be, and the same hereby is granted.

So ordered.