Franklin Thomas CHARLES,
Plaintiff–Appellant, (89–5464)

William C. Jacobs,
Attorney–Appellant, (89–5464)

v.

Scotty BAESLER, Mayor, Lexington–Fayette Urban County Government, and David Cooke, Director of Personnel, Lexington–Fayette Urban County Government, in their official capacities and individually; and Lexington–Fayette Urban County Government, Defendants–Appellees.

Franklin Thomas CHARLES,
Plaintiff–Appellant,
Cross–Appellee,

v.

Scotty BAESLER, Mayor, Lexington–Fayette Urban County Government, and David Cooke, Director of Personnel, Lexington–Fayette Urban County Government, in their official capacities and individually; and Lexington–Fayette Urban County Government, Defendants–Appellees, Cross–Appellants. (89–5533)

Nos. 89–5464, 89–5533.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 29, 1990.

Decided Aug. 14, 1990.

William C. Jacobs (argued), Lexington, Ky., for plaintiff-appellant, cross-appellee.

William C. Jacobs, Lexington, Ky., pro se.

Edward W. Gardner, Theresa L. Holmes (argued), Lexington–Fayette Urban County Government, Dept. of Law, Lexington, Ky., for defendants-appellees, cross-appellants.

Before JONES and RYAN, Circuit Judges, and HILLMAN, Chief District Judge.[*]

HILLMAN, Chief District Judge.

The parties to this 42 U.S.C. § 1983 civil rights action appeal and cross-appeal the adverse portions of the judgment rendered by the United States District Court for the Eastern District of Kentucky. We affirm in part, reverse in part, and remand with instructions.

### I.

In the early 1970s Kentucky joined the growing number of states that authorize consolidation of city and county governments into unified local governments. In 1974 the City of Lexington merged with Fayette County to form defendant, appellee, and cross-appellant Lexington–Fayette Urban County Government (the government). That same year, the Kentucky General Assembly adopted a merit system to govern certain personnel matters arising in the new urban county governments. Ky. Rev.Stat. § 67A.200 et seq. (1989). In accordance with this merit system, the Lexington–Fayette Urban County Government entered into an "inviolable contract" with its employees. By the terms of this employment contract, the government obligated itself to operate under sections 67A.230 to 67A.330 of the revised statutes and "all substantial matters" contained in the government's "first ordinance" as defined by statute. Ky.Rev.Stat. § 67A.330 (1989).

In 1980 the government enacted an ordinance, later codified at section 23–20 of its Code of Ordinance, regulating fire department job promotions. In general terms, section 23–20 provided that promotion applicants successfully completing a series of examinations would be placed on the promotion list for the next highest rank in the order determined by their examination performance. The promotion list for each rank remained in effect for two years. Thirty days before the expiration of an existing list, the government would develop a new list reflecting the results of new examinations. When the new list took effect at the end of an existing list's two-year life, applicants placed on the existing list could not carry over their placements from the existing list to the new list.

Section 23–20 placed fire department promotion authority in the government's mayor, subject to legislative approval. When a vacancy occurred at a particular rank, the mayor was required to fill or abolish it within ninety days. Vacancies would be filled sequentially from the promotion list for that particular rank over the two-year life of the list. In other words, if no vacancy were abolished within the ninety days, the promotion applicant placed first on a list would receive promotion to the first vacancy in the next highest rank that occurred within two years of the list's creation. The promotion applicant placed second would receive promotion to the second vacancy, and so on.

Plaintiff, appellant, and cross-appellee Franklin Thomas Charles is a captain in the government's fire department. He successfully completed the relevant fire department promotion examinations conducted by the government in January, 1981, and was placed fifth on the promotion list for the rank of major. Under section 23–20, the major's promotion list containing Charles' name expired in January, 1983. Defendant, appellee, and cross-appellant David Cooke is the government's personnel director. Among his responsibilities is the creation of new fire department promotion lists thirty days before the expiration of existing lists. Cooke mistakenly failed to prepare a new promotion list for the rank of major before the January, 1983 expira-

---

[*] The Honorable Douglas W. Hillman, Chief Judge of the United States District Court for the West-ern District of Michigan, sitting by designation.

tion of the list containing Charles' name. In fact, Cooke did not schedule new examinations and prepare a new major's promotion list until late 1984 or early 1985.

On May 1, 1984, a vacancy occurred at the major's rank. Section 23-20 consequently required defendant, appellee, and cross-appellant Scotty Baesler, the government's mayor, to fill or abolish the vacancy within ninety days, or by July 30. At the time the May 1 vacancy occurred, Charles topped the expired January, 1981 list for promotion from captain to major. Baesler did not abolish the major's vacancy on or before July 30. He likewise failed to promote Charles.

When it became clear to Charles in the summer of 1984 that the government was not going forward with the promotion process, he filed a grievance. After Charles met with several fire department supervisors and Baesler, the government denied the grievance, explaining that Charles would not be promoted because the promotion list containing his name had expired in January, 1983, and the vacancy at issue was scheduled to be abolished in the near future. The government in fact abolished the vacancy on November 1, 1984.

On November 21, 1984, Charles filed this 42 U.S.C. § 1983 action in the United States District Court for the Eastern District of Kentucky, naming the government, Baesler and Cooke as defendants. Charles contended that the government and its officials violated his federal constitutional rights by failing to promote him from captain to major. He sought declaratory and injunctive relief, back pay, a punitive damages award against Baesler, and an attorney's fee.

Following discovery, the parties submitted cross-motions for summary judgment. On March 1, 1988, the district court entered partial summary judgment for Charles, holding that the government, Baesler and Cooke deprived him of a contractually-based property right to promotion without due process of law. The district court rejected Charles' argument that the failure to promote denied him equal protection, and the court did not address Charles' impairment of contract claim. The court below additionally ruled that qualified immunity protected Baesler and Cooke from individual liability, and that punitive damages against Baesler were not appropriate.

To remedy the due process violation, the district court ordered back pay in the amount of the difference between a captain's and a major's salary between August 1, 1984, the date the court found Charles should have been promoted, and November 1, 1984, the date the government abolished the major's position at issue. The court declined to order the government and officials to promote Charles to major, reasoning that Charles had no entitlement to the position after its November 1, 1984 abolition. On March 14, 1989, the district court denied post-judgment motions, and awarded attorney-appellant William C. Jacobs, Charles' lawyer, a 42 U.S.C. § 1988 attorney's fee reduced to reflect incomplete success on Charles' section 1983 claim.

On April 13, 1989, Charles appealed the adverse portions of the district court's judgment, including the failure to order permanent promotion, the denial of his equal protection claim, the failure to address his impairment of contract claim, and the court's qualified immunity and punitive damages rulings. Jacobs appealed the reduction of his attorney's fee. The government, Baesler and Cooke thereafter cross-appealed, claiming the district court erred by finding a due process violation, and by approving an unsubstantiated hourly rate for purposes of the attorney's fee award.

## II.

The primary question presented by this appeal is whether substantive due process bars the government and its officials from breaching a contractual responsibility to promote Charles. We hold that substantive due process does not protect the run-of-the-mill contractually-based property interest present in this case. We likewise hold that the government and officials did not impair the obligation of Charles' employment contract, and that they did not deny Charles equal protection of the law.

Our resolution of this case on the merits accordingly moots the subsidiary immunity, remedial, and attorney's fee issues raised by the parties.

We review the disposition of the merits below on summary judgment under the same standard as the district court. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall issue if the evidence shows that the material facts are not in dispute, and the moving party is entitled to judgment as a matter of law. *See generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476–81 (6th Cir.1989) (detailing "new era" in summary judgments). The parties do not dispute the material facts. Consequently, our decision, like the district court's, depends solely on legal analysis.

■ To recover under section 1983, Charles must show, among other things, that Baesler, Cooke, or the government violated a right, privilege, or immunity secured to him by federal law. *See, e.g., Huron Valley Hospital, Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir.1989). As suggested above, Charles contends that the failure of the government and its officials to promote him to major violated three rights secured by the United States Constitution: his right not to be deprived of property without due process of law, secured by the Fourteenth Amendment; his right not to be denied equal protection of the law, also secured by the Fourteenth Amendment; and his right not to have the obligation of his contracts impaired, secured by Article I, Section 10. We consider each of these contentions in turn.

### A.

■ The Fourteenth Amendment's Due Process Clause protects life, liberty and property. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 n. 3, 105 S.Ct. 1487, 1491 n. 3, 84 L.Ed.2d 494 (1985). Charles does not claim a life or liberty interest in job promotion. He does claim a property interest on the basis of his employment contract. No doubt exists that contractual rights are a species of property within the meaning of the Due Process

Clause. *Perry v. Sindermann*, 408 U.S. 593, 601–02, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972).

The government and its officials vigorously dispute that Charles' interest in promotion is a term or benefit of his "inviolable contract" under section 67A.330 of the revised statutes. They specifically argue that section 23–20 of the Code of Ordinance does not create a right to promotion from an expired promotion list. They contend further that the continuing vitality of an expired promotion list in the absence of its proper replacement list is not a "substantial matter" incorporated into Charles' inviolable employment contract. Finally, they assert that in any event section 67A.330 of the revised statutes does not apply to fire department members.

The court below rejected these arguments and found that the relevant statutes and ordinances conferred upon Charles a contractual right to be promoted to major. In the absence of any discussion of these state-law issues by the Kentucky courts, we see no cause to disturb the reasoned conclusions of the experienced Kentucky district judge. *Bishop v. Wood*, 426 U.S. 341, 345–47, 96 S.Ct. 2074, 2077–79, 48 L.Ed.2d 684 (1976). We therefore proceed with the understanding that the government, Baesler and Cooke did indeed breach their contract to promote Charles, or, in constitutional parlance, deprived Charles of a contractually-based property interest.

We do not believe, however, that the deprivation occurred without due process of law. In any due process case, after the plaintiff establishes deprivation of life, liberty or property, "the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Due process may impose either substantive or procedural limitations upon a particular deprivation. *Kelley v. Johnson*, 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708 (1976). The present case, as Charles insistently repeats in his brief, involves substantive, not procedural, due process. In other words, Charles does not contend that the government and its officials could not deny

his promotion without first according him fair notice and hearing. Rather, Charles argues that he could not constitutionally be denied promotion at all. He asserts a categorical substantive due process right to promotion.

We conclude that no such right exists. Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Michael H. v. Gerald D.,* — U.S. —, 109 S.Ct. 2333, 2341, 105 L.Ed.2d 91 (1989) (plurality opinion) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (Cardozo, J.), *overruled on other grounds, Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964)). It protects those interests, some yet to be enumerated, "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937) (Cardozo, J.), *overruled on other grounds, Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), like personal choice in matters of marriage and the family. *See, e.g., Washington v. Harper,* — U.S. —, 110 S.Ct. 1028, 1038, 108 L.Ed.2d 178 (1990); *Michael H. v. Gerald D.,* 109 S.Ct. at 2341–42; *Turner v. Safley,* 482 U.S. 78, 94–96, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987); *Zablocki v. Redhail,* 434 U.S. 374, 383–86, 98 S.Ct. 673, 679–81, 54 L.Ed.2d 618 (1978); *Smith v. Organization of Foster Families,* 431 U.S. 816, 842, 97 S.Ct. 2094, 2108–09, 53 L.Ed.2d 14 (1977); *Moore v. City of East Cleveland,* 431 U.S. 494, 498–506, 97 S.Ct. 1932, 1934–39, 52 L.Ed.2d 531 (1977) (plurality opinion); *Cleveland Board of Ed-*

*ucation v. LaFleur,* 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974).

State-created rights such as Charles' contractual right to promotion do not rise to the level of "fundamental" interests protected by substantive due process. Routine state-created contractual rights are not "deeply rooted in this Nation's history and tradition," and, although important, are not so vital that "neither liberty nor justice would exist if [they] were sacrificed." *Bowers v. Hardwick,* 478 U.S. 186, 191–94, 106 S.Ct. 2841, 2844–46, 92 L.Ed.2d 140 (1986) (quoting *Moore v. City of East Cleveland,* 431 U.S. at 503, 97 S.Ct. at 1937–38 and *Palko v. Connecticut,* 302 U.S. at 326, 58 S.Ct. at 152).

In the present case, we do not believe liberty and justice are threatened, in the constitutional sense, by the failure of the government and its officials to abide by their contract with Charles. Governments breach contracts virtually every day without dire consequences ensuing to the human dignity or basic autonomy of the promisees. Indeed, legal philosophers have debated the degree to which the law should properly characterize any breach of contract as an "injustice" in the sense of moral default. *See generally* Atiyah, *The Legacy of Holmes Through English Eyes,* 63 B.U. L.Rev. 341 (1983). In any event, we are satisfied that in the usual breach of contract case such as this, failure to meet contractual obligations cannot be equated with the sort of injustice inherent in "egregious abuse of government power." *Huron Valley Hospital, Inc. v. City of Pontiac,* 887 F.2d at 715; *Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 198 (6th Cir.1987). *See also Wilson v. Beebe,* 770 F.2d 578, 586 (6th Cir.1985) (en banc). Similarly, any claim that Charles' right to promotion, which stems from the adoption of section 23–20 in 1980, is deeply rooted in our national history and tradition is both legally and historically indefensible. *Bowers v. Hardwick,* 478 U.S. at 194, 106 S.Ct. at 2846.

The case law directly on point buttresses our conclusion, although it is neither precedential nor unanimous. The Supreme

Court has assumed, without deciding, that substantive due process *might* protect some state-created, contractually-based property interests. *Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 222–23, 106 S.Ct. 507, 511–13, 88 L.Ed.2d 523 (1985) (assumed implied contractual right to continued medical school enrollment). *See also Harrah Independent School District v. Martin,* 440 U.S. 194, 198, 99 S.Ct. 1062, 1064, 59 L.Ed.2d 248 (1979). The only member of the Court who explicitly tested this assumption, however, found it wanting in the circumstances at issue. In his *Ewing* concurrence, Justice Powell explicitly adopted the position we put forward today:

> Even if one assumes the existence of a property right, however, not every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, *Board of Regents v. Roth,* 408 U.S. 564, 577 [92 S.Ct. 2701, 2709, 33 L.Ed.2d 548] (1972), substantive due process rights are created only by the Constitution. . . .
>
> The interest asserted by [Ewing] . . . is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution. It certainly is not closely tied to "respect for the teachings of history, solid recognition of the great roles that the doctrines of federalism and separation of powers have played in establishing and preserving American freedoms," *Griswold [v. Connecticut,* 381 U.S. 479, 501, 85 S.Ct. 1678, 1691, 14 L.Ed.2d 510 (1965) ] (Harlan, J., concurring in judgment). For these reasons, briefly summarized, I do not think the fact that Michigan may have labeled this interest "property" entitles it to join those other, far more important interests that have heretofore been accorded the protection of substantive due process. *Cf. Harrah Independent School District v. Martin,*

440 U.S. 194 [99 S.Ct. 1062, 59 L.Ed.2d 248] (1979).

474 U.S. at 229–30, 106 S.Ct. at 515–16.

In the wake of *Ewing* the Circuits have split on the question whether substantive due process protects run-of-the-mill state-created contractual property interests. The Eighth Circuit has continued to recognize substantive due process protection from "arbitrary and capricious" deprivation of some contract rights. *Moore v. Warwick Public School District No. 29,* 794 F.2d 322, 328–30 (8th Cir.1986) (relying on *Harrah Independent School District; Ewing* not cited). *See also Barnett v. Housing Authority of City of Atlanta,* 707 F.2d 1571, 1577 (11th Cir.1983) (pre–*Ewing* decision); *Gargiul v. Tompkins,* 704 F.2d 661, 668 (2d Cir.1983), *vacated on other grounds,* 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984) (pre–*Ewing* decision). The majority view, however, accords with our conclusion in this case. *Reich v. Beharry,* 883 F.2d 239, 243–45 (3d Cir.1989); *Schaper v. City of Huntsville,* 813 F.2d 709, 716–18 (5th Cir.1987); *Boston Environmental Sanitation Inspectors Ass'n v. City of Boston,* 794 F.2d 12, 13 (1st Cir. 1986) (per curiam) (breach of contractual promotion rights); *Brown v. Brienen,* 722 F.2d 360, 366–67 (7th Cir.1983) (pre–*Ewing* decision).

The law of this Circuit, while not entirely clear, supports our view that Charles' contractual promotion right does not enjoy substantive due process protection. Initially, we note that distinguished appellate and trial judges in this Circuit have suggested the dubiousness of protecting similar interests under the substantive Due Process Clause. *McMaster v. Cabinet For Human Resources,* 824 F.2d 518, 523 (6th Cir.1987) (Nelson, J., concurring); *Easley v. University of Michigan Board of Regents,* 627 F.Supp. 580, 582 n. 4 (E.D.Mich.1986) (Feikens, C.J.), *remanded on other grounds,* 853 F.2d 1351 (6th Cir.1988).

In addition, we find support for our present holding in *Ramsey v. Board of Education of Whitley County, Kentucky,* 844 F.2d 1268 (6th Cir.1988). In *Ramsey,* a retired schoolteacher sued her school board

and superintendent under section 1983, claiming they deprived her of due process by reducing her contractually accrued sick leave credit. 844 F.2d at 1269–71. Although the language of the *Ramsey* decision does not specifically distinguish between procedural and substantive due process, it is clear to us that the case involved the latter doctrine; as in the present case, Ramsey sought substantive relief, not a hearing on her deprivation. *Id.* at 1271. The court found that section 1983 did not provide a remedy under the circumstances presented, holding that "an interference with a property interest in a pure benefit of employment, as opposed to an interest in the tenured nature of the employment itself, is an interest that can be and should be redressed by a state breach of contract action...." *Id.* at 1274–75.

We construe *Ramsey*'s distinction between "pure benefits of employment" and "the tenured nature of the employment itself" as a distinction between fundamental interests protected by substantive due process and lesser interests not so protected. In making this distinction, the *Ramsey* court identified the ready availability of routine state-law remedies as one useful factor in determining whether a given interest should be recognized as constitutionally fundamental. *But cf. Vinson v. Campbell County Fiscal Court*, 820 F.2d at 198 ("[w]hen a violation of substantive due process rights is claimed, the existence of state postdeprivation remedies has no bearing on whether a cause of action exists").

As *Ramsey* points out, "an employee deprived of a property interest in a specific benefit, term, or condition of employment, suffers a loss which is defined easily ... and therefore, any interference with that interest is redressed adequately in a state breach of contract action." *Id.* at 1274. In contrast, a person unreasonably deprived of her fundamental liberty to marry, for instance, may suffer a more undefinable loss of physical, emotional, psychological, social and economic autonomy not readily redressed at common law. *Cf. Turner v. Safley*, 482 U.S. at 95–96, 107 S.Ct. at 2265 (discussing tangible and intangible inci-

dents of marriage in substantive due process context). The touchstone of substantive due process protection undoubtedly remains our history and social traditions. *Michael H. v. Gerald D.*, 109 S.Ct. at 2341–42. In light of the caution courts must exercise in this area, however, *see Moore v. City of East Cleveland*, 431 U.S. at 502, 97 S.Ct. at 1937, we see nothing amiss, at least in ordinary contract cases, in considering the availability of state-law remedies in accordance with *Ramsey*.

In the instant case, the definiteness of Charles' asserted loss and the availability of an adequate state remedy, like the more important historical and philosophical factors mentioned earlier, suggest that we should not recognize Charles' contractual promotion right as fundamental and hence protected by substantive due process. As the district court found, Charles' loss is easily compensable by calculating the difference between a captain's and major's salary over the relevant period of time. Moreover, it appears that the compensation may be readily had in a breach of contract action in the Kentucky courts. *Ramsey*, 844 F.2d at 1274 n. 5.

In sum, we do not conclude that all state-created contract rights lack substantive due process protection. For example, substantive due process may well protect a contract right to keep a tenured job, *Ramsey*, 844 F.2d at 1274–75 (dicta), although it may also be, in light of the fact that "substantive due process rights are created only by the Constitution," *Regents of the University of Michigan v. Ewing*, 474 U.S. at 229, 106 S.Ct. at 515 (Powell, J., concurring), that tenure is in fact a protected fundamental *liberty* interest once it is conferred by contract. *See Harrah Independent School District v. Martin*, 440 U.S. at 197–98, 99 S.Ct. at 1063–64. *Cf. Sullivan v. Brown*, 544 F.2d 279, 283 (6th Cir.1976) (liberty interest in continuing employment opportunity). In any event, tenure is not the issue here. In this case, we find applicable the Seventh Circuit's observation in *Brown v. Brienen* that "the Constitution must not be trivialized by being dragged into every personnel dispute in state and

**1356**

local government. Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment." 722 F.2d at 365. The instant dispute over Charles' contractual right to job promotion, like the disputes listed in *Brown*, does not involve an interest of sufficient weight to merit the protection of the substantive Due Process Clause.

### B.

█ The district court did not consider Charles' claim under the Contracts Clause of Article I, Section 10. We see no reason to remand this question, however, as the foregoing discussion largely resolves the issue. The Contracts Clause prohibits state and local governments from passing laws that impair the obligation of contracts. As set forth above, despite Charles' studious avoidance of contract terminology, he asserts nothing more in this case than that the government and its officials did not make good on the promise they made, in his "inviolable" employment contract under section 67A.330 of the revised statutes and section 23–20 of the Code of Ordinance, to promote him to major. That is a breach of contract. *See Black's Law Dictionary* 171 (5th ed. 1979).

A simple breach of contract by a government entity does not impair the obligation of the breached contract. The obligation of the contract remains, despite the breach, until it is extinguished by the breaching government's subsequent performance or payment of damages. Accordingly, so long as governmental action does not foreclose an adequate damages or special performance remedy, a breach does not run afoul of the Contracts Clause. *Hays v. Port of Seattle*, 251 U.S. 233, 237–38, 40 S.Ct. 125, 126–27, 64 L.Ed. 243 (1920); *Casey v. Depetrillo*, 697 F.2d 22, 23 (1st Cir.1983) (per curiam); *E & E Hauling, Inc. v. Forrest*

*Preserve District of DuPage County, Illinois*, 613 F.2d 675, 679–80 (7th Cir.1980). In the present case, because Charles does not point to any conduct by the government that affects the availability of a state action to enforce the obligation to promote him, his impairment of contract claim must fail.

### C.

█ The Fourteenth Amendment's Equal Protection Clause prohibits, among other things, discriminatory administration of a law neutral on its face. *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886). Charles' equal protection claim, as well as one aspect of his substantive due process claim,[**] rests on the fact that the government, Baesler and Cooke administered the facially nondiscriminatory statutes and ordinances at issue here in such a way that ten fire department members were promoted at various times from expired promotion lists, while Charles was denied promotion from the expired list containing his name. The court below rejected Charles' equal protection claim with a one-sentence reference to its unpublished decision two years earlier in a case similar to this one, *Ward v. Baesler*. We find the district court's reference to *Ward* somewhat unclear. Consequently, we will rely on a possibly different ground than the district court in affirming the denial of the equal protection claim. *See Blum v. Bacon*, 457 U.S. 132, 137 n. 5, 102 S.Ct. 2355, 2359 n. 5, 72 L.Ed.2d 728 (1982); *Brown v. St. Louis Police Department of the City of St. Louis*, 691 F.2d 393, 396 (8th Cir.1982), *cert. denied*, 461 U.S. 908, 103 S.Ct. 1882, 76 L.Ed.2d 812 (1983).

In order to establish an equal protection violation, Charles must show that the government, Baesler, or Cooke adminis-

---

[**] We note as an aside that *discriminatory* administration of contractual public employment rights may implicate substantive due process as well as equal protection concerns, even if the liberty or property interest involved cannot be deemed independently fundamental. In such situations, substantive due process and equal protection doctrine overlap. This is because the

substantive component of the Due Process Clause incorporates many, if not all, of the Constitution's specific civil rights protections, including the right to equal protection of the law. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1328–29 (6th Cir.1988); *Ramsey v. Board of Education of Whitley County, Kentucky*, 844 F.2d at 1275 (Edwards, J., dissenting).

tered the contractual promotion system with a discriminatory intent or purpose. *Wesley v. Collins*, 791 F.2d 1255, 1262 (6th Cir.1986). Charles fails to point to any evidence in the record below or on appeal that could support a finding of purposeful discrimination. The record in fact shows that the government promoted two fire department members, Chrisman and Eads, from expired lists under a predecessor ordinance to section 23–20, the ordinance relevant to Charles' promotion. The government interpreted the earlier ordinance to allow such interim promotions, while it interpreted section 23–20 to prohibit them. Charles argues energetically that the two ordinances cannot support contrasting interpretations, but nothing in the record suggests that the government *knew* it was wrong in interpreting the ordinances differently. Accordingly, when the government promoted Chrisman and Eads under its interpretation of the predecessor ordinance, but declined to promote Charles under its interpretation of section 23–20, the disparate treatment was not intentionally discriminatory. At worst, it was merely incorrect as a matter of state and municipal law.

Similarly, as for the remaining eight fire department members admittedly given interim promotions under section 23–20, the district court found in *Ward v. Baesler* that the promotions occurred under the government's mistaken assumption that the lists containing those eight names had not completely expired due to circumstances not relevant here. In other words, the government and its officials did not purposefully promote those eight persons in violation of their interpretation of section 23–20 as a prohibition of interim promotions. Again, therefore, when the government and its officials promoted the latter eight fire department members, but declined to promote Charles, no invidious discriminatory intention existed. On the contrary, by denying Charles' promotion the government and its officials intended to act consistently with the previous promotions and with the official interpretation of section 23–20.

In short, Charles' equal protection claim boils down to the assertion that "he was treated one way and everyone else another," which "has never been thought to raise an equal protection claim." *Wagner v. Higgins*, 754 F.2d 186, 194 (6th Cir.1985) (Contie, J., concurring). Charles may be correct in arguing that the government and its officials in fact singled him out due to their sloppy administration of the contractual promotion system and their misapplication of state and local law. Such negligence is a far cry, however, from intentional invidious discrimination. *Beck v. Washington*, 369 U.S. 541, 554–55, 82 S.Ct. 955, 962–63, 8 L.Ed.2d 98 (1962); *Snowden v. Hughes*, 321 U.S. 1, 7–9, 64 S.Ct. 397, 400–01, 88 L.Ed. 497 (1944).

### III.

In light of the foregoing, Charles has not established that the government and its officials deprived him of any federally-secured rights. Accordingly, he is not entitled to any relief in this section 1983 suit. We AFFIRM the district court's disposition of the equal protection claim, and REVERSE its finding of a substantive due process violation. We VACATE the judgment and post-judgment order entered below, and REMAND with instructions to dismiss without prejudice to Charles' pursuit of his contractual remedies in the Kentucky courts.