12 F.3d 212
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
D.L. GEREN; C.L. Disney; Cecil Cranfield; William E.
Allison, Plaintiffs-Appellants,
v.
BRADLEY COUNTY, TENNESSEE; The Bradley County, Tennessee
School Board, et al., Defendants-Appellees.
 No. 92-6371.
 United States Court of Appeals, Sixth Circuit.
 Nov. 10, 1993.
 
 On Appeal from the United States District Court, for the Eastern District of Tennessee, No. 92-00001; Edgar, Judge.
 E.D.Tenn.
 AFFIRMED.
 Before: JONES and SILER, Circuit Judges; and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 The plaintiffs brought this action pursuant to 42 U.S.C. Sec. 1983, charging the defendants with constitutional violations by depriving the plaintiffs of their property without due process of law and taking that property for public purposes without paying just compensation. The district court granted summary judgment in favor of the defendants, finding no due process violations and no "taking," and dismissed the action with prejudice. The judgment also dismissed pendent state law claims asserted by the plaintiffs without prejudice. Upon consideration of the briefs and oral arguments of the parties together with the record on appeal, we find no reversible error. Accordingly, we affirm the judgment of the district court.
 
 I.
 
 2
 Since the 1950's, the Bradley County, Tennessee school system (the Board) has contracted with private individuals to provide bus transportation for its students. A single contract is used for each bus route, and must be made for a minimum of two years under state law. The Board allows, with its approval, the buying and selling of bus routes between private individuals. Before the Board action complained of, each of the four plaintiffs had at least two route contracts, which they purchased from their predecessors with the approval of the Board.
 
 
 3
 In the Spring of 1991, the Bradley County school system began to have severe financial difficulties and initiated discussions for the elimination of five bus routes. On May 9, 1991, Alvin Lee, a school board member, proposed that an incentive of $10,000 to $15,000 be given to those bus contractors who voluntarily relinquished their routes. Although the Board passed this recommendation, no further action was taken to eliminate the five bus routes.
 
 
 4
 On July 9, 1991, the Board eliminated thirteen bus routes without further discussion of compensation for those contracts eliminated. Soon after, on July 11, 1991, the Board carried out this resolution by eliminating on the basis of seniority, one route of each contractor holding multiple routes. As a result, each plaintiff lost one of his routes without the opportunity to relinquish it voluntarily or to receive payment for it.
 
 
 5
 In support of their motion to dismiss, which the district court treated as a motion for summary judgment, the defendants filed copies of minutes of numerous school board meetings which demonstrated that the Board had changed routes and reallocated routes frequently in the past as the needs of the schools dictated. Other documents showed conclusively that the Board retained tight control over the routes. Although drivers could transfer or relinquish their routes to someone else, this could be done only after the Board was satisfied that the new driver, who was required to appear before the Board in person, was fully qualified. The minutes reflected no treatment by the Board of routes as private property on the occasions when routes were added, combined, or otherwise changed. These actions were taken to meet changed requirements for pupil transportation.
 
 II.
 
 6
 The district court based its summary judgment decision on several considerations.
 
 
 7
 With respect to the claim that elimination of one of each plaintiff's routes constituted a taking of private property for public use without payment of just compensation, which is prohibited by the Fifth Amendment (and made applicable to the states through the Fourteenth Amendment), the court determined that even if the routes were found to be property, the Board did not "take" them; rather, it eliminated them by combining several into one.
 
 
 8
 Concerning the claims of due process violations, the court found that since the routes were not property, the drivers were due no constitutional process in connection with their elimination. The court went farther, however. It held that to the extent the plaintiffs asserted procedural due process violations, such claims were foreclosed because the state provided pre- and post-deprivation remedies, and the plaintiffs had not alleged or shown that these procedures were inadequate. Insofar as the plaintiffs asserted substantive due process violations, the district court held that deprivation by a state of run-of-the-mill contractual rights does not reach the level of substantive due process.
 
 III.
 
 9
 We review a grant of summary judgment de novo, applying the settled rule that parties opposing a motion for summary judgment must demonstrate the existence of a genuine issue of material fact as to each essential element of the claim. FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Macene v. MJW, Inc., 951 F.2d 700, 703 (6th Cir.1991). One essential element of both the due process and taking claims of these plaintiffs is the existence of a property or property right.
 
 A.
 
 10
 The due process clause concerns state actions that deprive a person of life, liberty or property. Here, the plaintiffs claim a property interest in the bus routes that were eliminated. For due process purposes, "property" is not confined to land or tangible personal property, and may include contractual rights. Perry v. Sindermann, 408 U.S. 593, 601-02 (1972). Nevertheless, the concept of property is not limitless. The Supreme Court provided a clear description of "[c]ertain attributes of 'property' interests protected by procedural due process" in an oft-quoted statement in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972):
 
 
 11
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
 
 
 12
 Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 13
 Measured by these criteria, it is clear that the plaintiffs have failed to demonstrate that they can establish the existence of a property interest. No plaintiff paid the Board for his bus routes. The Board permitted approved drivers to acquire and trade routes, but always kept control over the routes. The record demonstrates conclusively that the Board has always retained the right to establish new routes, realign routes and combine routes to meet the demands and needs of the school system. The fact that the Board permitted drivers to transfer routes--with its approval--in exchange for payment does not mean that the Board forfeited its right to control the routes.
 
 
 14
 Each driver knew that, regardless of what he might have paid another driver for the privilege of hauling students over a given route, the Board always retained control over the entire student transportation operation. Furthermore, contracts with the drivers could not exceed two years and any assumption that a contract with a particular driver for a certain route would be renewed indefinitely arose from nothing more than "an abstract ... desire for it," based on a "unilateral expectation." Roth, 408 U.S. at 577. The entire history of dealings between the Board and bus drivers refuted this expectation.
 
 
 15
 Having found that the drivers had no property interest protected by the Due Process Clause, our inquiry need go no farther. We do agree with the district court, however, that if the plaintiffs in this case had established the existence of a protected property interest, both their procedural and substantive due process claims would fail for other reasons.
 
 
 16
 As the district court pointed out, the plaintiffs had notice of the Board's intention to eliminate some of their routes and they failed to avail themselves of Tennessee procedures for challenging the proposed actions and the alleged bias of some board members. When a state offers adequate procedures to remedy allegedly unlawful official actions, the party claiming injury must resort to those procedures rather than suing initially in federal court. This is not an "exhaustion" requirement; rather, it is a recognition that no due process violation occurs where a state's procedures provide a remedy for official misconduct that satisfies the "essential requirements of due process ... notice and an opportunity to respond." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546 (1985).
 
 
 17
 The plaintiffs' substantive due process claims are totally without merit. No fundamental right was involved in the Board's action. A public body must have leeway in changing such contractual relations as those the Board had with the plaintiffs in order to be able to carry out its essential tasks--in this case, the education of the children of Bradley County. As the district court noted, this court has held that "substantive due process does not protect ... run-of-the-mill contractually-based property interest[s]...." Charles v. Baesler, 910 F.2d 1349, 1351 (6th Cir.1990). If the plaintiffs had a property interest, clearly it would be a run-of-the-mill type.
 
 B.
 
 18
 The finding of no property interest disposes of the plaintiffs' Fifth Amendment claim of a government "taking" for public purposes without the payment of just compensation. Again, however, if the plaintiffs' contract rights rose to the level of property, the Board's action in eliminating some of the routes would not be an unconstitutional taking. The Supreme Court has held that there is no "set formula" for determining whether a governmental action resulting in economic injuries constitutes a "taking" for Fifth Amendment purposes. Kaiser Aetna v. United States, 444 U.S. 164, 175 (1979) (quoting Penn Central Transportation Co. v. New York City, 438 U.S. 104, 124 (1975)). Rather, courts must engage in case-by-case factual inquiries, examining "several factors--such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the governmental action." Kaiser Aetna at 175. The Court has repeatedly identified these same factors as significant in cases involving a variety of claimed property interests. E.g., Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1005 (1984); Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 224 (1986).
 
 
 19
 The plaintiffs' claims in the instant case would fail two of these three inquiries. While they have suffered some economic injury, they had no reasonable investment backed expectation of an indefinite right to any bus route. The Supreme Court has defined this reasonable expectation as "more than a 'unilateral expectation or an abstract need.' " Ruckelshaus v. Monsanto, 467 U.S. at 1005-06 (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980)). We have held in our due process analysis that the plaintiffs had nothing more than a unilateral expectation. As to the character of the government action, it was neither arbitrary nor unusual. In an effort to balance its budget the Board merely reduced the number of school bus routes it operated by combining routes. It did not deprive any of the plaintiffs of all of their routes. All were still operating at least one route. The Takings Clause of the Fifth Amendment does not so tie the hands of government bodies that they cannot carry out their essential functions because of the unreasonable expectations of parties contracting with them. That is precisely what the plaintiffs in this case have sought to do.
 
 
 20
 The judgment of the district court is affirmed.