183 F.3d 524 (6th Cir. 1999)
 CHARLIE'S TOWING & RECOVERY, INC. AND BROWN & BARNES, INC., D/B/A MOSBY'S TOWING & RECOVERY, PLAINTIFFS-APPELLANTS,
v.
JEFFERSON COUNTY, KENTUCKY AND PURCHASING DEPARTMENT, LOUISVILLE/JEFFERSON COUNTY, DEFENDANTS-APPELLEES.
 Argued: June 15, 1999
 
 No. 98-5628
 U.S. Court of Appeals, Sixth Circuit
 Argued: June 15, 1999
Decided and Filed: July 15, 1999
 Appeal from the United States District Court for the Western District of Kentucky at Louisville. No. 96-00527--Charles R. Simpson, III, Chief District Judge.
 Edward F. Harrington, Jr. (argued and briefed), Airhart & Associates, Louisville, Kentucky, for Plaintiffs-Appellants.
 I.G. Spencer, Jr. (argued and briefed), Office of the Jefferson County Attorney, Louisville, Kentucky, for Defendants-Appellees.
 Before: Guy, Cole, and Clay; Circuit Judges.
 OPINION
 Ralph B. Guy, Jr., Circuit Judge.
 
 
 1
 Plaintiffs, Charlie's Towing & Recovery, Inc. (Charlie's Towing), and Brown & Barnes, Inc., d/b/a Mosby's Towing & Recovery (Mosby's Towing), appeal from the entry of summary judgment in favor of defendants Jefferson County and the Louisville/Jefferson County Purchasing Department. Plaintiffs' claims, brought under 42 U.S.C. § 1983, allege that defendants deprived them of a constitutionally protected property interest in connection with the awarding of publicly bid towing contracts with the County. We affirm.
 
 I.
 
 2
 In December 1995, the purchasing department issued an invitation to bid on towing contracts for Jefferson County. The County had been divided into five districts, A through E, for purposes of the towing contracts. Bidders were required to be located within the district for which they submitted a bid. The bid invitation was answered by two companies in area A, Tony's Wrecker Service and J-Town Towing; no one in area B; two in area C, Mosby's and Bob Vincent & Sons Wrecker Service; two in area D, Coffey's Towing Recovery and Suburban Wrecker Service;and, finally, one in area E, Charlie's Towing. Jefferson County Police Chief Ronald Ricucci evaluated the bids and notified the purchasing department's director, Betty Bingham, which bids met all specifications and were the low bids for each area. As the only bidder for area E, Charlie's Towing was listed. In area C, however, Bob Vincent & Sons was listed rather than Mosby's.[1]
 
 
 3
 Since no bids were received for area B, Ricucci initially requested that only area B be "re-bid." Ricucci later recommended that the areas be changed from five to four areas to coincide with the four existing police districts in the county. This proposal was accepted by Bingham, who noted that there were no companies in the current towing area B and that it would be easier for police to know which towing company to call if the areas coincided with the police districts. Also, it was discovered that the only bidder for the original area A, Tony's Wrecker Service, had a prior towing contract terminated because of numerous citizen complaints.
 
 
 4
 The first invitation to bid was withdrawn and a second invitation to bid, to be opened April 19, 1996, was issued requesting bids in four areas, A through D. New bids were received as follows: two in area A, J-Town Towing and Tony's Wrecker Service; three in area B, Mosby's Towing, Coffey's Towing, and Bob Vincent & Sons; only one in area C, Suburban Wrecker; and two in area D, Charlie's Towing and Star Towing. The bids were evaluated and tabulated by a purchasing department buyer, Bob Cromis, to determine the low bid, if not necessarily the best bid. Cromis states by way of affidavit that he considered all of the bid items and did not ascribe any greater weight to any one line item. The tabulation sheets and memoranda support this statement. After tabulation of the bids, a meeting was held on June 13, 1996, to negotiate a uniform price for all of the towing areas. Although plaintiffs challenge this action, the bid documents specifically provided:
 
 
 5
 "JEFFERSON COUNTY FISCAL COURT RESERVES THE RIGHT TO NEGOTIATE CONTRACT PRICES FOR THE PURPOSE OF UNIFICATION OF PRICES THROUGHOUT ALL COUNTY AREAS, AFTER ALL BIDS HAVE BEEN OPENED."
 
 
 6
 In a letter received June 27, 1996, Charlie's Towing and Mosby's Towing protested the manner of the solicitation of the bids, the method of evaluating the proposals, and the selection of the successful bidders. Bingham responded on July 2, 1996, that (1) the award of the bid had already been approved by the fiscal court; (2) a review of the file showed nothing contrary to the public's best interest; (3) the bid award was based upon the low bid meeting specifications in each area; and (4) a uniform price was established based on the lowest bid of $24 for straight auto tow and $7 for first day storage. Defendants emphasize that no contracts have been executed based on the bid awards.
 
 
 7
 On July 19, 1996, plaintiffs filed this action in state court, and defendants removed the case to federal court based upon plaintiffs' allegations of constitutional violations under § 1983. On cross-motions for summary judgment, the district court found no genuine issue of material fact existed because plaintiffs did not have a protected property interest and the County did not abuse its discretion in awarding the towing contracts. The district court also rejected the claim that defendants engaged in collusive bidding with towing companies under common ownership in violation of the Robinson-Patman Act, 15 U.S.C. § 13, because (1) the contracts did not involve interstate commerce; (2) the Act applies only to goods, not services; and (3) plaintiffs had offered no proof of collusive bidding. Plaintiffs' motion for reconsiderationand renewed motion for summary judgment also were denied. Plaintiffs filed a timely appeal.
 
 II.
 
 8
 We review the district court's decision to grant or deny summary judgment de novo. See, e.g., Smith v. Ameritech, 129 F.3d 857 (6th Cir. 1997). In deciding a motion for summary judgment, the district court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. See Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine issue for trial is presented when there is sufficient evidence upon which the jury could reasonably find for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).
 
 
 9
 To prevail on their § 1983 claims, plaintiffs must establish that the defendants acted under color of state law to deprive the plaintiffs of a right secured by the Constitution or laws of the United States. See Enertech Elec., Inc. v. Mahoning County Comm'rs, 85 F.3d 257, 259-60 (6th Cir. 1996). Plaintiffs acknowledge that we have expressly held:
 
 
 10
 "A constitutionally protected property interest in a publicly bid contract can be demonstrated in one of two ways. A bidder can either show that it actually was awarded the contract and then deprived of it, or that, under state law, the County had limited discretion, which it abused, in awarding the contract."
 
 
 11
 Id. at 260 (citing United of Omaha Life Ins. Co. v. Solomon, 960 F.2d 31, 34 (6th Cir. 1992) and Peterson Enter., Inc. v. Ohio Dep't of Mental Retardation, 890 F.2d 416 (6th Cir. 1989) (unpublished)).[2]
Kentucky statutes require that the County's fiscal courts adopt a county administrative code, including procedures for county "purchasing and the award of contracts." Ky. Rev. Stat. Ann. § 68.005(1)(d) (Baldwin 1996). Jefferson County's administrative code sets forth the procedures for the award of contracts in the Jefferson County Procurement Code (JCPC).
 
 
 12
 Plaintiffs cannot show that they were actually awarded a towing contract under either bid, or that the County was required to award them a contract. Mosby's was not the lowest bidder in its area during either bidding process. As the only bidder in its area for the first bid, Charlie's Towing was the low bidder. Nonetheless, the County elected to re-bid the contracts. There is no dispute that the JCPC did not require the County to award the contract to the lowest bidder but, rather, reserved to the County the right to cancel or reject any and all bids, in whole or part, as may be specified in the solicitation, see JCPC § 20.08(H). The bid invitations in this case both stated at the top of page one: "The right is reserved to select the lowest and best bid, also to reject any or all bids or any part thereof." There being no entitlement to an award of the bid under state law, there is no constitutionally protected property interest. See Ferencz v. Hairston, 119 F.3d 1244, 1247 (6th Cir. 1997) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).[3]
 
 
 13
 Plaintiffs claim that the County had limited discretion in awarding the contracts and abused that discretion by (1)failing to set forth evaluation criteria in the bid solicitations; (2) negotiating with lowest bidders after the bids were opened; and (3) allowing "collusion" in the bidding process since three of the successful bidders were related corporations. Abuse of discretion in this context implies an unreasonable, arbitrary, or unconscionable attitude, arbitrary means without adequate determining principle; and unreasonable means irrational. See Enertech, 85 F.3d at 260.
 
 
 14
 Plaintiffs rely upon the provision in § 20.08(c)(5) of the JCPC requiring that invitations for bids set the evaluation criteria to be used. Plaintiffs contend that the County weighted certain line items in awarding bids, even though no evaluation criteria were disclosed in the invitations. The July 2 letter from Bingham, relied upon by plaintiffs, indicates that the bid awards were made based upon the low bid meeting specifications in each area. It was only then that a uniform price was established through negotiations based on the lowest bid on two line items; straight towing (one ton) and first-day storage. Further, the failure of a governmental body to follow a given procedure does not create a property right. See Ferencz, 119 F.3d at 1248.
 
 
 15
 Next, plaintiffs claim defendants violated the JCPC provision that "bids shall be unconditionally accepted without alteration or correction," by conducting negotiations after the bids had been opened and evaluated and increasing prices above the lowest bids. The bid invitations, however, expressly reserved the right to negotiate after the bids were opened and it was the lowest bidders who were asked to participate in the negotiations. We agree with the district court's assessment that it was not an abuse of discretion to negotiate prices upward after the awards were made because the purpose of establishing uniform pricing throughout the County was a rational one.
 
 
 16
 Finally, plaintiffs claim that this negotiation was an abuse of discretion because it allowed collusion in the bidding process by three successful bidders using predatory pricing in violation of the Robinson-Patman Act. Plaintiffs make no attempt to show that the district court erred in concluding that the Act was not applicable to contracts for towing services within Jefferson County. Further, although there was evidence that three of the successful bidders were companies under the control of one individual, there was no evidence of collusion. Plaintiffs emphasize that with respect to six of the line items in the bid awards, the negotiated award price was higher than the bids made by Suburban Wrecker and Bob Vincent & Sons. Suburban did not compete against either plaintiff, however. Finally, even the higher negotiated prices on these items were still lower than the bids on these items by either Mosby's or Charlie's.
 
 
 17
 AFFIRMED.
 
 
 
 NOTES:
 
 
 [1]
 Mosby's Towing protested, through counsel, on the grounds that Bob Vincent & Sons was not located in the district, was purchased and operated by Suburban Wrecker Service, and did not meet a number of the bid specifications.
 
 
 [2]
 See also Brielmaier Co. v. Newport Housing, 1999 WL 236193 (unpublished) (6th Cir. 1999) (no protected property interest was violated when bid for construction project was rejected); Reshan Int'l, Inc. v. City of Kalamazoo, 1999 WL 71606 (unpublished) (6th Cir. 1999) (no protected property interest in towing contract).
 
 
 [3]
 Even if plaintiffs could prove a breach of contract, a simple breach of contract does not rise to the level of a constitutional violation. See Medical Laundry Serv. v. Board of Trustees of Univ. of Alabama, 906 F.2d 571, 573 (11th Cir. 1990).