**WILLIE MCCORMICK & ASSOCIATES, INC.,**
Plaintiff–Appellant,

v.

**CITY OF DETROIT and L. D'Agostini & Sons, Defendants–Appellees.**

No. 01–1936.

United States Court of Appeals, Sixth Circuit.

March 19, 2003.

BEFORE: MERRITT and DAUGHTREY, Circuit Judges, and RUSSELL,* District Judge.

MERRITT, Circuit Judge.

Plaintiff Willie McCormick & Associates, Inc. appeals the summary judgment grant-

ed in favor of the City of Detroit on claims arising from the plaintiff's unsuccessful bid for a city water system contract. The primary issue raised is whether plaintiff's bid gives rise to a sufficient "property interest" to trigger protection under the Due Process Clause. For the reasons that follow, we affirm the judgment of the district court in its entirety.

## Facts

In April 1999, the City of Detroit sought bids on a contract to improve the water system. Competition for the contract was restricted to firms that were certified either as a "Detroit Based Business" or a "Small Business Enterprise," which requires a showing that average revenues during the preceding three years were less than $17 million per year. The bids were opened and announced on May 27, 1999. The two lowest bids were from L. D'Agostini & Sons, Inc., which bid $5,336,810.50, and the plaintiff, which bid $5,878,815.90.[2] Because D'Agostini had been certified as a Small Business Enterprise, and submitted the lowest bid, the contract was awarded to D'Agostini.

On June 3, 1999, the plaintiff sent a letter protesting the award of the contract to D'Agostini. In the letter, the plaintiff asserted that D'Agostini was neither a Detroit Based Business nor a Small Business Enterprise. The City rejected the protest, finding plaintiff's claims to be without merit.[3]

---

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

2. Detroit City Ordinance 18–5–2(1) provides for equalization of bids from Detroit-based businesses with varying percentages according to the contract amount. Plaintiff, as a Detroit-based business, was given an equalization allowance, reducing its bid from $5,878,815.90 to $5,820,027.74.

3. The Contract Compliance Division of the City's Human Rights Department is responsible for determining whether an applicant meets the requirements for certification as a Small Business Enterprise. The division certified D'Agostini as a Small Business Enterprise on September 2, 1998. The certification was valid for two years, expiring on September 2, 2000.

On April 6, 2000, the plaintiff filed suit against the defendants in Wayne County Circuit Court. The original complaint contained counts for mandamus/superintending control[4] and declaratory relief, together with a motion to enjoin the award of the contract to D'Agostini. After its motions for a temporary restraining order and a permanent injunction were denied, the plaintiff amended its complaint to add counts for "violation of plaintiff's constitutional right/due process." breach of contract, estoppel, exemplary damages, taxpayer suit, discrimination, and violation of Michigan's whistleblower's act.

The City then filed a motion for summary judgment. On October 30, 2000, the court denied the City's motion on the counts of mandamus/superintending control, declaratory relief and "violation of plaintiff's constitutional right/due process," but granted the motion with respect to all other counts. The plaintiff then sought, and was granted, leave to file a Second Amended Complaint. On January 31, 2001, the plaintiff filed its Second Amended Complaint, setting forth the same counts it alleged in the First Amended Complaint and adding counts pursuant to 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

On February 15, 2001, the City removed the action to federal court. Subsequently, the City filed a motion to dismiss or, in the alternative, for summary judgment. On May 31, 2001, the district court granted summary judgment to the City on plaintiff's "constitutional right/due process," 42 U.S.C. § 1981, and 42 U.S.C. § 1983 claims. The court then remanded the remaining state law claims to the Wayne County Circuit Court. The plaintiff filed

this timely appeal of the district court's May 31, 2001 order.

## Discussion

The district court opinion addressed only the claims under federal law, declining to exercise supplemental jurisdiction over the remaining state law claims after concluding that the federal claims were without merit. We conclude that the district court correctly granted summary judgment to the City on each of the federal claims.

## I. Procedural due process

In its first claim, the plaintiff asserts that it was not provided adequate due process in the award of the contract. In order to assert a valid procedural due process claim, a plaintiff first must show that it has been deprived of a protected property interest. *See Ferencz v. Hairston,* 119 F.3d 1244, 1247 (6th Cir.1997). Absent a protected property interest, a plaintiff cannot assert a due process violation. *See Booher v. United States Postal Service,* 843 F.2d 943 (6th Cir.1988). A disappointed bidder for a government contract may establish a constitutionally protected property interest in a contract by showing either that it was awarded the contract or that local rules limited the discretion of the state officials as to whom the contract should be awarded. *See Ferencz,* 119 F.3d at 1248.

In this case, because the plaintiff was never awarded the contract, it must establish its property interest by demonstrating that local rules limited the City's discretion in the award of the contract.[5] The plaintiff does not assert that Michigan statutes or

---

4. A writ of superintending control enforces the superintending control power of a court over lower courts or tribunals. Mich. Ct. R. 3.302.

5. In support of its claim, the plaintiff has directed the Court to several cases in which a party was deprived of a previously granted status or property right, a situation that is factually distinguishable from the facts before

caselaw limited the discretion of the city officials in such a way as to create a property interest. Instead, it urges the Court to find a protected property interest in "Executive Order No. 4, and the department directives, ordinances, codes, rules, regulations and practices of the City of Detroit in administering and awarding contracts pursuant to the [Small Business Enterprise/Detroit Based Business] program."

■ The plaintiff asserts that the city code, as a source of state law, sufficiently limits the City's discretion in awarding contracts to establish the requisite property interest in the contract. The same code, however, also mandates that the Detroit City Council approve the contract. *See* Detroit City Code § 18–5–5 (specifying that no contract with a value more than $25,000 can be entered into without council approval). Neither the city charter nor the bidding ordinance restricts the Council's discretionary authority in awarding a contract; therefore, these sources of law may not serve to create a protected property interest and they suggest that the City did not intend to create any reliance interest sufficient to establish a property right.

Next, the plaintiff contends that the procedures outlined in Executive Order No. 4 and the department directives regarding the Detroit Based Business and Small Business Enterprise programs may serve to create a protected property interest. This assertion also is without merit. In *Charlie's Towing and Recovery v. Jefferson County*, 183 F.3d 524, 528 (6th Cir. 1999), this Court held that "the failure of a governmental body to follow a given procedure does not create a property right." More specifically, the Seventh Circuit has stated that "[i]n the absence of an underlying property interest, the Due Process Clause does not require states to obey their own procedural rules in awarding municipal contracts." *Kim Construction v. Board of Trustees of the Village of Mundelein*, 14 F.3d 1243, 1246 (7th Cir.1994).

Finally, the plaintiff asserts that the bid documents themselves limited the City's discretion in such a manner as to create a property right. Plaintiff emphasizes that the advertisement for the contract provided that "[i]f the Owner elects to award the Contract, the Owner will make the award to the Bidder who submits the lowest responsive bid." However, the advertisement also made clear that the City retained discretionary authority to reject any or all bids, as well as to waive any nonconformities. The reservation of rights provision clearly limits the plaintiff from forming a reasonable expectancy amounting to a property interest. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (stating that "[t]o have a property interest in a benefit, a person ... must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it"). The discretionary authority retained in the bid documents themselves, like the city charter and the bidding ordinance, suggests that no property right on which the plaintiff could reasonably rely was created.

Because the plaintiff failed to demonstrate that it acquired a property interest in the award of the contract, the district court properly dismissed its procedural due process claim.

## II. Substantive Due Process

As outlined above, plaintiff has not established that it had a constitutionally protected interest in the award of the con-

us. *See, e.g., Baja Contractors v. Chicago*, 830 F.2d 667 (7th Cir.1987); *Altenheim v. Tur-* *nock*, 902 F.2d 582 (7th Cir.1990).

tract. The Sixth Circuit has noted that "[m]ost, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The Substantive Due Process Clause is not concerned with garden variety issues of common law." *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.1990). Indeed, substantive due process "affords only those protections so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* Routine state-created contractual rights are not so vital that "neither liberty nor justice would exist if [they] were sacrificed." *id.,* and protection of these rights does not fall within the ambit of the Substantive Due Process Clause. The district court correctly dismissed the substantive due process claim.

## III. Equal Protection and 42 U.S.C. § 1981

As both parties recognize, the requirements of an equal protection claim mirror those of a claim under 42 U.S.C. § 1981. *See Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988). These claims are based on plaintiff's allegation that the City has not enforced the facially neutral bidding requirements against D'Agostini but did enforce the same requirements against the plaintiff. To prove its claims, the plaintiff must demonstrate that the City administered the bidding process with a discriminatory intent or purpose. *See Charles,* 910 F.2d at 1356–57; *General Bldg. Contractors Ass'n v. Pennsylvania,*

458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). A plaintiff may establish a claim of discrimination either by introducing direct evidence of discrimination, or by providing circumstantial evidence that would support an inference of discrimination. *See Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir.1977).

Plaintiff asserts that D'Agostini received preferential treatment because D'Agostini was permitted to bid and receive the contract when its revenues exceeded the Small Business Enterprise revenue requirement.[6] Plaintiff further asserts that D'Agostini's bid should have been disqualified because it failed to comply with the instructions by improperly listing itself as a subcontractor for 60% of the contract work and failing to identify any of the subcontractors in its bid.

In response, the City contends that plaintiff has presented no evidence that racial considerations played any part in the City's decisions. As support, the City submitted the affidavit of Jacelyn Lewis, who stated that "race played no part in my decision to recommend that the Human Rights Department issue a Small Business Enterprise certificate to D'Agostini." Lewis also stated that she did not inquire into the race of the principals of D'Agostini during the investigative process.

Even if we were to accept the plaintiff's allegations of preferential treatment, as we are required to do, the plaintiff did not introduce any evidence that the advantages D'Agostini received were based upon impermissible racial consider-

---

**6.** The district court noted that because the plaintiff and D'Agostini were corporations, they have no racial identity. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The court also noted that the plaintiff presented no competent evidence that McCormick corporation was a "black" corporation or that D'Agostini was a "white" corporation. Plaintiff offered only an

unsigned affidavit stating that Willie McCormick, the plaintiff's sole shareholder and president, was an African–American and that he understood that D'Agostini was owned and controlled by an Italian–American family. *See* Opinion at 9, J.A. at 527. The court nonetheless considered plaintiff's § 1981 claim and determined that it failed on the merits.

ations. We also note that the City of Detroit and its chief legislative body have a large majority of African Americans, as well as an African American mayor. It would be unusual indeed to find a majority black municipal administration intentionally discriminating against members of its black business community on the basis of race. Because the plaintiff failed to produce any evidence to support its allegation of intentional discrimination and failed to inform the court at the hearing below of any outstanding discovery that would create a genuine issue with respect to the issue, we affirm the district court's grant of summary judgment on plaintiff's equal protection and § 1981 claims.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court in its entirety.