Jacquelyn BURNETT, et al., Plaintiffs,

v.

COLLEGE OF THE MAINLAND, et al., Defendants.

Civil Action No. 3:12–CV–00310.

United States District Court, S.D. Texas, Galveston Division.

Jan. 13, 2014.

Order Denying Reconsideration Feb. 21, 2014.

---

Anthony P. Griffin, A. Griffin Lawyers, Galveston, TX, for Plaintiffs.

James Edwards Byrom, Walsh, Anderson, Brown, Gallegos & Green, P.C., Houston, TX, for Defendants.

### MEMORANDUM AND ORDER

GREGG COSTA, District Judge.

Seven former nursing students at College of the Mainland (COM) allege that the college violated their substantive and procedural due process rights by failing them in a class that was a requirement for graduation. The gist of their complaint is that the college changed its policy concerning whether the students could retake an exam. COM argues that the students' procedural claims should be dismissed because the students received an ample appeal process. And it argues that the substantive due process claims fail because COM's decision to give the students a failing grade in the class without an opportunity to retake the exam was a reasonable exercise of professional judgment.

This case was referred to the magistrate court, which concluded that COM's motion to dismiss should be granted in part and denied in part. This Court now conducts the required *de novo* review of COM's motion.

### I. BACKGROUND [1]

COM is a public community college located in Texas City. Plaintiffs are seven former students in COM's nursing program: Jacquelyn Burnett, Kesha Davis, Liza Davis, Bridgette Fuselier, Stella Mbagwu, Gina Stafford, and Jerusa Wekulo. Docket Entry No. 8 ¶ 4. The students enrolled in COM's nursing program at various points in 2010 and 2011. *Id.* ¶ 8. Upon their enrollment, they received a student handbook, which contained a requirement that students pass an exit examination—the HESI NCLEX–RN readiness exam—as a prerequisite to graduation. The handbook also provided that students could retake this exam if they did not pass it on the first attempt.

In 2010, the Texas Board of Nursing issued a position statement "recommending that a high stakes test not be the only criteria for graduation." *Id.* ¶ 38. Based on this recommendation, COM changed the way students would be required to take the HESI exam. Instead of administering the exam as a standalone test, COM decided to include the HESI exam in the nursing program's Advanced Medical Surgical course, where it would account for 40% of the students' final grades. *Id.* ¶ 40. This change was instituted in the fall of 2011. The students claim that COM never put this modification to the policy in writing and did not otherwise inform the students of this change. *Id.* ¶ 42.

In June 2012, the students took the HESI exam as part of the Advanced Medical Surgical course and later learned that they failed the course and could not graduate. The students then contacted an administrator in the nursing program and asked to retake the exam. They also met with Gay Reeves, the Director of the Nursing School. Neither encounter led to what the students were ultimately looking for—an opportunity to retake the HESI exam and be eligible for graduation. The students then voiced their concerns at a meeting of COM's Board of Trustees, which also did not change COM's decision. *Id.* ¶ 34. Finally, they launched a formal grade appeal. In August 2012, the appeal panel rejected their request to retake the

---

1. The background section is based on allegations in Plaintiffs' First Amended Complaint, *see* Docket Entry No. 8, which the Court must assume to be true at this stage.

examination, asserting that COM informed the students of the change and, furthermore, that COM has the right to change nursing program policies when necessary. The end result is that the students have not graduated from COM's nursing program.

The students brought section 1983 claims against COM and Reeves, asserting violations of their substantive and procedural due process rights. The magistrate judge submitted his Memorandum and Recommendation on COM's motion to dismiss the students' claims, and COM filed timely objections. The magistrate judge recommended that the Court dismiss the claim against Reeves in her official capacity because it was duplicative of the claim against COM. However, the magistrate judge concluded that the procedural and substantive due process claims against COM and Reeves in her individual capacity should survive the motion to dismiss.

## II. Rule 12 Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows dismissal if a plaintiff fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999)). The court does not look beyond the face of the pleadings to determine whether the plaintiff has stated a claim. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To survive a motion to dismiss, a claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

## III. Discussion

### A. Procedural Due Process

■ As a threshold matter in the procedural due process analysis, it is not clear that students have any liberty or property interests in academic programs that would merit procedural protections under the Fourteenth Amendment. Following the lead of the Supreme Court in *Board of Curators of Univ. of Missouri v. Horowitz*, courts have assumed, without deciding, that students have some protected interest in public higher education. 435 U.S. 78, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978); *see also Shaboon v. Duncan*, 252 F.3d 722, 730 (5th Cir.2001) (assuming without deciding that medical resident had protected interest); *Davis v. Mann*, 882 F.2d 967, 973 (5th Cir.1989) (quoting *Horowitz* for the proposition that even "assuming the existence of a liberty or property interest," dental resident received adequate process under the Fourteenth Amendment).

■ Any procedural requirements that attach to academic decisions are "far less stringent" than those that exist when a student challenges a disciplinary decision made by a public institution, when the student is entitled to an "'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in proper context." *Horowitz*, 435 U.S. at 86, 98 S.Ct. 948 (quoting *Goss v. Lopez*, 419 U.S. 565, 584, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). Lighter oversight of academic evaluations of students is warranted because "[e]ducational institutions 'should not be weighted down with formalized procedural requirements imposed by actors estranged from the academic environment.'" *Ekmark v. Matthews*, 524 Fed. Appx. 62, 64 (5th Cir.2013) (quoting *Davis*, 882 F.2d at 974). Therefore, adverse academic actions "require only the minimum

procedure of notice and not a hearing." *Id.* (citing *Horowitz,* 435 U.S. at 90, 98 S.Ct. 948).

Neither side contests that the actions taken by COM in relation to the students were academic, rather than disciplinary, in nature. And when they challenged those actions, the students "exercised their rights to both an informal and formal appeal of the denial" to retake the HESI exam. Docket Entry No. 8 ¶ 28. Their attendance at the Board of Trustees' meeting alone would have been more than sufficient to satisfy their procedural rights because they had the opportunity to "voice their complaint to the Board"—i.e., representatives of the administrative body that made the adverse academic decision. *Id.* ¶ 34. And the students received far more process than that one Board meeting. Indeed, they received a full formal grade appeal, after which a panel issued a position statement explaining the reasoning behind COM's decision. This panel review went well beyond what courts have found sufficient to satisfy procedural due process concerns in similar circumstances. *See, e.g., Ekmark,* 524 Fed.Appx. at 64 (holding that medical resident who was notified of reason for his suspension was given adequate process); *Shaboon,* 252 F.3d at 731 (holding that medical resident who was informed her position was in jeopardy due to deficient performance and given several opportunities to explain why she should not be dismissed received adequate process); *Davis,* 882 F.2d at 975 (holding that dental resident who received an informal hearing "received even more procedural protections than are required by the Fourteenth Amendment"). Based on the extensive process the students were afforded—in the context of a procedural due process regime that only imposes a notice requirement on COM—the students have not alleged a violation of their procedural

due process rights sufficient to withstand a Rule 12 motion to dismiss.

## B. Substantive Due Process

■ The students also allege that the decision to no longer allow them to retake the HESI exam was a violation of their substantive due process rights. The existence of a substantive due process right to be free from arbitrary grading is even more dubious than the unsettled proposition that public higher education is a property right that gives rise to a procedural due process claim. *See Regents of Univ. of Michigan v. Ewing,* 474 U.S. 214, 229, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (Powell, J., concurring) ("While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution." (citation omitted)). The Supreme Court has never recognized such a right; instead, it twice merely assumed that such a right existed as a matter of constitutional avoidance because the claim asserted would not be a successful one. *See id.* at 222, 106 S.Ct. 507 (agreeing to "assume[ ], without deciding, that federal courts can review an academic decision of a public educational institution under a substantive due process standard"); *Horowitz,* 435 U.S. at 91–92, 98 S.Ct. 948 ("Even assuming that the courts can review under such a standard an academic decision of a public educational institution, we agree with the District Court that no showing of arbitrariness or capriciousness has been made in this case."). This Court has little doubt that the Supreme Court, if confronted with the issue today, would reject the existence of such a right given the current standard that any substantive due process right must be "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg,* 521 U.S. 702, 720–21, 117 S.Ct.

2258, 138 L.Ed.2d 772 (1997). This Court is aware of nothing in this Nation's past (or its present for that matter) recognizing a fundamental liberty interest to be free from arbitrary grading decisions, even though every American has probably felt, at one time or another during their student days, like a victim of such practices.[2]

This Court will follow the lead of the Supreme Court and other courts, however, which have avoided deciding the question whether such a right exists when the allegations are insufficient to show that the challenged conduct "is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Ewing,* 474 U.S. at 225, 106 S.Ct. 507. The allegations demonstrate that COM exercised judgment in ending its retake policy. The change did not happen in a vacuum, but came about only after a recommendation from the Texas Board of Nurses that nursing programs should deemphasize high stakes tests. The trade-off was that students could no longer retake the exam, as it would now be a component of a course instead of a stand-alone requirement.

The exercise of judgment is all COM needs to show, but that judgment appears to be sound. Once the exam was merely one assignment in a particular class, not allowing a "do over" promoted finality, efficiency, and fairness—interests that are good enough to justify many of the rules that govern our legal system. Plaintiffs would no doubt lay claim to the fairness mantle in the sense that allowing "do overs" allows more people to "succeed." But there is another conception of fairness—

that every student should be graded under the same conditions. And even judged by the Plaintiffs' standard in which fairness means relaxing requirements (which, of course, means that the value of the degree may be watered down), the change concerning the HESI exam actually sought to reduce the stress associated with "all or nothing" finals by removing it as an independent graduation requirement. *See* Docket Entry No. 8 ¶ 38.

Although the case law on whether academic decisions actually constitute a substantive due process violation is scant (the Court has found no Fifth Circuit case ever finding such a claim valid), the Court's conclusion that COM's decision was not "beyond the pale of reasoned academic decision-making" is in line with the cases that do exist. *See Ewing,* 474 U.S. at 227–28, 106 S.Ct. 507 (affirming university's decision to disallow one student to retake an exam even though the university had given other students the opportunity to retake that same exam); *Wheeler v. Miller,* 168 F.3d 241, 250 (5th Cir.1999) (finding that decision to deny student with poor grades a doctorate "[did] not come close to showing that [University] did not exercise professional judgment."); *Chan v. Board of Regents of Tex. S. Univ.,* 2012 WL 5832494, at *5–6 (S.D.Tex. Nov. 16, 2012) (granting summary judgment for law school on claim that its curved grading system violated students' constitutional rights). Perhaps the most analogous case comes from the Supreme Court of Mississippi, which concluded that modifying an exam requirement after a student's enrollment was a reasonable academic decision. *See Univ. of Miss. Med. Ctr. v. Hughes,* 765 So.2d 528 (Miss.2000). In *Hughes,* a

---

**2.** What would follow the recognition of a substantive constitutional right to be free from arbitrary grading decisions? High school football teams asserting constitutional claims to be free from arbitrary officiating? *Cf.* Tim Daniels, *Pennsylvania Man Sues NFL After Chargers Make Playoffs on Missed Call,* bleacherreport.com, Jan. 9, 2014 (discussing suit against NFL alleging poor officiating, albeit a lawsuit apparently sounding in tort).

medical school explained that it enacted a new exam requirement so that students "who received an M.D. degree from the University would be qualified for entry into residency training in Mississippi." *Id.* at 541. Additionally, a majority of medical schools nationwide had changed their curriculums to add the same requirement. Based on that evidence, the court found that the policy change, though made after the plaintiffs had already enrolled, "was rationally related to the University's legitimate function of educating physicians." *Id.* at 542.

The same is true in this case. COM's changed retake policy in response to a new directive from the Texas Board of Nursing is rationally related to its mission of educating nurses, most of whom will practice in Texas.

## IV. CONCLUSION

For the reasons explained above, the Court agrees with COM's objections to the Report and Recommendation and finds that Plaintiffs have not alleged violations of their procedural or substantive due process rights sufficient to withstand a motion to dismiss. Because no constitutional violation has been adequately pled, the Court need not address Reeves' qualified immunity defense or the other elements of Plaintiffs' section 1983 claim. Accordingly, Defendants' First Amended Motion to Dismiss (Docket Entry No. 11) is **GRANTED.** Plaintiffs have already amended their complaint once, and given the Court's reasoning, any additional amendment would be futile. The case is therefore **DISMISSED WITH PREJUDICE.**

## *ORDER DENYING MOTION FOR RECONSIDERATION*

Plaintiffs seek reconsideration of the Court's Memorandum and Order dismiss-

ing the suit they brought against their former college, Defendant College of the Mainland (COM).[1] A COM Nursing Program Student Handbook allegedly guaranteed them the opportunity to retake a critical exam. They argue that COM's failure to abide by the terms of that handbook—in their view, a binding contract— was a violation of their procedural and substantive due process rights that the Court should have allowed to survive the Rule 12 stage.

Plaintiffs might be correct that COM's handbook created a binding contract. *See Univ. of Tex. Health Sci. Ctr. at Houston v. Babb,* 646 S.W.2d 502, 506 (Tex.App.-Houston [1st Dist.] 1982, no writ) (finding that school catalog was an express contract where it assured students that it would remain in effect through the students' completion of the program); *compare Tobias v. Univ. of Tex. at Arlington,* 824 S.W.2d 201, 211 (Tex.App.-Fort Worth 1991), *cert. denied,* 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (finding that school catalog was not binding contract because of catalog's disclaimer that its provisions did not "constitute a contract, express or implied"). And at the Rule 12 stage, the Court would have to accept such an allegation. But Plaintiffs never asserted a breach of contract claim in either of the two complaints they were allowed to file. Instead, they asserted two federal constitutional claims: one alleging a violation of procedural due process, the other alleging a violation of substantive due process. The Court will thus address how the possible existence of a contract affects those two claims.

## I. PROCEDURAL DUE PROCESS

■ A contract with the state can give rise to a protected property interest that

1. Because the Court dismissed their claims at the Rule 12 stage, the Court will treat Plain-

tiffs' Motion for New Trial as a motion for reconsideration. *See* Docket Entry No. 23.

implicates procedural due process guarantees. But that does not help Plaintiffs because the Court already assumed that Plaintiffs had a protected interest that gave rise to a procedural due process right to contest COM's decision to deny them a retake. *See* Docket Entry No. 20 at 825 (following the position of courts that "have assumed, without deciding, that students have some protected interest in public higher education"). The Court rejected the procedural due process claim because COM's informal and formal grade appeal process amounted to more than sufficient process, and that is the case even if a contractual right required more procedural protections than merely an interest in public higher education. Docket Entry No. 20 at 825–26 (explaining how the procedures Plaintiffs' received went far beyond constitutional threshold). The possible existence of a contract therefore does nothing to change the determination that adequate procedure was afforded.

## II. Substantive Due Process

■ As to their substantive due process claim, another court has cogently explained why the existence of a contract does not affect that analysis:

> Most, if not all, state-created contract rights, while assuredly protected by procedural due process, are not protected by substantive due process. The substantive Due Process Clause is not concerned with the garden variety issues of common law contract. Its concerns are far narrower, but at the same time, far more important. Substantive due process "affords only those protections 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" It protects those interests,

some yet to be enumerated; "implicit in the concept of ordered liberty" like personal choice in matters of marriage and the family.... Routine state-created contractual rights are not "deeply rooted in this Nation's history and tradition," and, although important, are not so vital that "neither liberty nor justice would exist if [they] were sacrificed."

*Thomas v. Gee,* 850 F.Supp. 665, 675 (S.D.Ohio 1994) (quoting *Charles v. Baesler,* 910 F.2d 1349, 1353 (6th Cir.1990) (internal citations omitted)). None of the cases Plaintiffs rely upon lend support for the view that contractual rights created by a student handbook give rise to a substantive due process right protected by the Constitution. Rather, the cases examine the rights that school catalogs afford students in the context of breach-of-contract claims. *See, e.g., Babb,* 646 S.W.2d at 506 (affirming existence of valid contract based on school catalog but not addressing procedural or substantive due process rights); *Sharick v. Se. Univ. of Health Sci., Inc.,* 780 So.2d 136, 138 (Fla.Dist.Ct.App.2000) (allowing private college student to recover based on breach of implied-in-fact contract claim where college did not contest on appeal jury's finding that college's actions were arbitrary and capricious); *Marquez v. Univ. of Washington,* 32 Wash.App. 302, 648 P.2d 94, 97 (1982) (affirming dismissal of plaintiff's breach of contract claim against law school based on pre-law handbook).

And again it is worth pointing out that the Court's decision assumed the existence of a substantive due process right. While the Court's decision cast doubt on a fundamental right to be free from arbitrary grading,[2] the Court's opinion assumed the

---

**2.** Plaintiffs challenge the Court's characterization of their claim of one to be free from arbitrary grading, but even if more properly

termed a right to be free from changes in grading policy, the Court maintains similar

existence of such a right but found that a reasoned decision for the change was apparent from the face of the complaint.

### III. LEAVE TO AMEND

Plaintiffs seek leave to amend and file their third complaint in this case. Docket Entry No. 23 ¶ 1 ("Plaintiffs should be allowed to amend (to make their pleadings clearer) and develop the underlying facts to resolve the factual questions presented"). But such an amendment would be futile with respect to the federal due process claims because the prior complaint makes clear that Plaintiffs received adequate procedures and COM has provided a reasoned explanation for the changed policy.

It would also be inappropriate to add a state law contract claim, over which no independent federal jurisdiction would exist, after the federal claims have been dismissed. Even if a state law claim has been part of the original allegations in this case, dismissal of the federal claims at this early stage would likely have compelled the Court to decline exercising supplemental jurisdiction over a remaining state claim. *See* 28 U.S.C. § 1367(c); *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 161 (5th Cir.2011) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." (quoting *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir.1992))); *see Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (noting that when the federal claims are eliminated at an "early stage" of the litigation the district court has "a powerful reason to choose not to continue to exercise jurisdiction"). Accordingly, the Court will not grant leave to amend. Whether Plaintiffs can prevail on a contract claim against COM filed in state court is a question for another judge to decide.

### IV. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for New Trial (Docket Entry No. 22), which the Court has treated as a motion for reconsideration, is **DENIED**.

doubts. As noted above, the Court is assuming the existence of a right.